**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA**
<u>Pensacola</u> **DIVISION**

## CIVIL RIGHTS COMPLAINT FORM
<u>TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983</u>

Carlos Ruiz ,

Inmate # 086219 .

(Enter full name of Plaintiff)

vs.

CASE NO: 3:15cv553-MCR-CJK
(To be assigned by Clerk)

W.D. Rommel, C.H.O. ,
Nichols, RPN , and ,
Rodrigo Vivas, director ,

_____ .

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

**ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:**

## I.    PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:        Carlos Ruiz

Inmate Number            086219

Prison or Jail:           Florida State Prison

Mailing address:          7819 N.W. 228th St.
                          Raiford, Fla 32026

## II.   DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for **every** Defendant:

(1)    Defendant's name:      W. D. Rummel

       Official position:     Chief Health Officer

       Employed at:           Santa Rosa Corr. Inst.

       Mailing address:       5850 E. milton Road
                              milton Fla. 32583

(2)    Defendant's name:      Nichols,

       Official position:     RPN

       Employed at:           Santa Rosa Corr. Inst.

       Mailing address:       5850 E. milton Road
                              milton, Fla 32583

(3)    Defendant's name:      Rodrigo Vivas

       Official position:     Director or C.H.O.

       Employed at:           Florida State Prison

       Mailing address:       7819 N.W. 228th St.
                              Raiford, Fla 32026

## ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV.    PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.    Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes( ✗ )                    No(   )

1.    Parties to previous action:
(a)    Plaintiff(s): _Carlos Ruiz_
(b)    Defendant(s): _DOC Secretary_
2.    Name of judge: _Waves_          Case #: _2010 CA 000363_
3.    County and judicial circuit: _2nd Jud. Cir., Leon County_
4.    Approximate filing date: _2. 2010_
5.    If not still pending, date of dismissal: _March /11_
6.    Reason for dismissal: _failure to state a claim_
7.    Facts and claims of case: _abuses against inmates_

**(Attach additional pages as necessary to list state court cases.)**

B.    Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( ✓ )                    No (   )

1.    Parties to previous action:
a.    Plaintiff(s): _Carlos Ruiz_
b.    Defendant(s): _Corr. officer Osteen, et al._
2.    District and judicial division: _U.S. Dist Court, Pensacola_
3.    Name of judge: _MCR/EmT_          Case #: _240_
4.    Approximate filing date: _April 2012_
5.    If not still pending, date of dismissal: _Dismissed_
6.    Reason for dismissal: _abuse of judicial system?_

7. Facts and claims of case: _Physical assoult upon plaintiff_
_8th amend. Right violated._

**(Attach additional pages as necessary to list other federal court cases.)**

C. Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( )                    No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:
   a. Plaintiff(s): _Carlos Ruiz_
   b. Defendant(s): _Shaner, et al,_
2. District and judicial division: _U.S. Dist Court, Pensacola_
3. Name of judge: _LC/CTK_          Case #: _488_
4. Approximate filing date: _April 2013_
5. If not still pending, date of dismissal: _Pending_
6. Reason for dismissal: _____
7. Facts and claims of case: _8th amendment violation_
   _____

**(Attach additional pages as necessary to list cases.)**

D. Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes(✓)                    No( )

1. Parties to previous action:
   a. Plaintiff(s): _Carlos Ruiz_
   b. Defendant(s): _Gaynor, et al,_
2. District and judicial division: _U.S. Dist. Court, Pensacola_
3. Name of judge: _MCR/CTK_       Case Docket # _495_
4. Approximate filing date: _2012_    Dismissal date: _2012_
5. Reason for dismissal: _failure to state a claim ?_

4

_see page 4-1_

Here, plaintiff will fully state all cases filed by him in state and federal courts.

In state and first DCA:

Case no. 2008 CA 4123, 2009 CA 2106, 2009 CA 2107, 2009 4003, 2010 CA 000363, 2011 CA 1275, 2011 CA 1303, 2011 CA 1441, 2011 CA 2174, 2011 CA 2954, 2012 CA 1390, 63-2012 CA 0054, 2015 CA 001815, 1D10-6034, 1D12-3122, 1D12-2001, and maybe 1 or 2 others, plaintiff do not keep records.

federal:

Case no. 3:90cv651/WTH., Case no. 3:11cv292/mcR/EmT, Case no. 8:90cv763/WTH; [Case no. 8:90cv817/RWN;-- that is not plaintiff] Case no. 3:90cv74/HES; Case no. 3:12cv405-Lc/cTk, Case no. 3:12cv443-Lc/EmT; case no. 3:12cv404 mcR/cTk; case no. 3:12cv 479-Rv/cTk; case no. 3:12cv427-mcR/cPk.

Class action "Osterback v. Singletary"— don't know the case no. it was originally filed in miami.

If there is any other case not cited above, it is not plaintiffs' intention to keep it from the court — plaintiff have not other records than what is Reflected in case no. 3:12cv488-Lc/cTk.

Carlos Ruiz, plaintiff

4-1

## Jurisdiction and Venue

This is a civil action authorized by 42 U.S.C Section 1983 to redress the deprivation, under color of state law, of rights secured by the constitution of the U.S. This court has jurisdiction under 28 U.S.C Section 1331 and 1343(a)(3). Plaintiff seek declaratory relief pursuant to 28 U.S.C Section 2201 and 2202. Plaintiff claim for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Fed. Rules of Civ P.

The northern District of Fla, Pensacola Division, is the appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

Carlos Ruiz, the plaintiff, is and was at all times mentioned herein a prisoner of the State of Florida in custody of the DOC.

Defendant W.D. Rummel and Nichols are medical agents who, at all times mentioned in this complaint, held the position of chief medical officer and practicing Registrated nurse employeed by the DOC in Santa Rosa C.I as provider of health care to all inmates.

Defendants Rodrigo Vivas is the Director of the Fla. St. Prison' medical Department in charge of providing health care to all inmates, who, at all times mentioned in this complaint, held the position of director of the medical department at Fla. St. Prison.

Each defendant is sued individually and in his/her personal and official capacity. At all times mentioned in this complaint, each defendants actued under the color of state law.

6.   -Facts and claims of case:  _Cruelty, 8th amend. violated_

**(Attach additional pages as necessary to list cases.)**

## V.   STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places. Do not make any legal arguments or cite to any cases or statutes.  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  (**If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.**)

Pursuant to the exception of "Imminent danger of serious physical Injury" standard, see 28 USCA § 1915(6) plaintiff files this civil action in accordance with 42 U.S.C.A Section 1983.

1. On May 21, 2010 plaintiff was surprisively attacked by a black roommate, named 'Carlos McCloud, Doc# 437425, who did it for the officers -- the officers first instigated and then asked him to hurt or kill plaintiff¹, in retaliation for plaintiff grieving and going to court²², exposing untold abuses committed against C.M. inmates

2. However, plaintiff was not supposed to be housed with black inmates, documented in Griev. log# 0712-119-339 and 08-6-00919, where, by central office, it was noted in plaintiff's contact card, DC6-229, eDaily Record of Segregation Form: not to house plaintiff with black inmates.

3. Since 2008 there was a campaign going on by officers telling

¹ documented on Grievance log#1005-119-329, filed on 5/18/10.

²² Case no. 2010 CA 000363 filed in the Leon Court

5

all black inmates in every building/dorm that plaintiff was
housed at that plaintiff did not like blacks and asking them to
hurt plaintiff any time they got a chance. Also documented at
all levels.

4. On March or April 2010, before this first attack upon plaintiff
on May 21, 2010( and many times thereafter), the first D < A sent
letter-warning to the DOC Inspector General concerning plaintiff'
safety, and no one lifted a finger to prevent it. Later on,
Plaintiff deduced that this attack (and others, too) was
carried out by orders of some one high in central office, as
stated in affidavits by inmate witnesses.

5. That day, 5/21/10, plaintiff sustained severe head and bodily
injuries, including a fracture in his spinal cord and a life thre-
atening skull fracture in his left orbit. And since that day,
Plaintiff's left side, from his rib cage down, including his left
penis, testicle, and stomach, is numb, and the left side of his
brain, too; numb.

6. On April 2012, plaintiff filed in this court case no. 3:12cv240-
MCR/EMT (dismissed without prejudice) documenting everything
of the aforesaid attack upon plaintiff, behind of which were
involved several officers, all documented at all levels.

7. Plaintiff medical files will prove it all, even the fact that
it was another inmate who had attacked plaintiff. However,
the same officers who were behind plaintiff's paid attack,
filed false reports stating that they had observed plaintiff
attempting to kill himself by banging his head against the wall.

8. From day one, everything was hushed and covered -- to protect the implicated officers -- all documented hundreds of times.

9. From day one, plaintiff grieved the fact that he had a spinal cord injury. Even officer Leonard told the nurse "He (plaintiff) have got a back injury" -- documented many times, too.

10. Plaintiff' medical files will also show that it was defendant Nichols who documented, on plaintiff' medical files, that it was an inmate who had attacked and hurt plaintiff.

11. On June 2010, the only time plaintiff was "seen" by defendant Nichols, upon entering the medical room, defendant Nichols stated "oh, you are the guy who was beaten". Documented, too.

12. From May 2010 and up to date, plaintiff have never stopped grieving his condition : 4 or 5 hundreds of medical grievances have he filed, even begging for medical care for his left side numbness, and every one was denied -- at all levels : to protect the implicated officers.

13. Plaintiff, desperate, filed a mandamus petition, case no. 2011 CA 001275, seeking medical care, and it was also denied. The fact of having to go to court seeking and begging for medical care show the true face of the system! and the deep cover up of the DOC.

14. On March 2012, plaintiff was transferred from Santa Rosa C.I. to Reception Medical Center (RMC) for eye surgery and, upon arrival, plaintiff complained of his left side numbness, and few days later plaintiff was seen by doctor Rodrigo Vivas, who ordered X-rays

6-1

for plaintiff.

15. When the X-rays results come back, defendant Vivas told plaintiff "The X-rays showed a fracture in your spinal cord, that explains your leg (the numbness the rest), but we don't know why your whole left side is numb, so I will order a MRI".

16. The issue of the fractured spinal cord was settled by the X-rays --the MRI was ordered to see why all of plaintiff' left side was numb. However plaintiff have never stated that his whole left side is numb but only from the rib cage down plus the left side of his brain.

17. X-rays do not need approval from central office but MRI do. So once central office knew of plaintiff, the MRI, according to them, do not show anything: plaintiff faked the X-rays. yet, plaintiff medical files show a compression fracture on his spinal cord, from 3/12/12, the first time anything was done on plaintiff' back.

18. However, plaintiff have never stopped grieving and asking for medical care. On february 2013, plaintiff was transferred from Santa Rosa CI to Central florida Reception Center for a laser eye surgery to try to correct the first eye surgery, which left plaintiff seeing double, and there, too, plaintiff complained of his left side numbness and where doctor Mendosa told plaintiff that there was nothing in to day medicine to correct plaintiff' brain numbness and that one day he may even lose control of the left side of his face.

19. On Oct 1, 2013, plaintiff was released from c.m. and transferred to Lake C.I, where he also sought medical care for his left side, and doctor Mesa told plaintiff 2 times "I've got no time to review all your medical files, they are too large". Documented, too.

20. Then, plaintiff was transferred to Tomoka C.I, where he also attempted to seek medical care, and, in response to one of his grievances, plaintiff was told "You have been seen several times by medical staff and they have not found anything to be clinically wrong with you. Your care has been equal to or above community standards". Poor community. However, In Tomoka C.I plaintiff was never examined by no one regarding his numbness. Matter of fact, the only time plaintiff have been "seen" for this problem was in 2012 on RMC by defendant Vivas, who didn't know anything about what was going on with plaintiff, and, whom, after telling plaintiff of the x-rays results, lifted plaintiff shirt and put his finger right on the very spot where plaintiff' spinal cord injury is located. Nowhere, no one else, before or after, have examined plaintiff for anything.

21. On march 2013, doctor Mendosa also proved, after plaintiff' complained about it, that plaintiff' left leg is atrophied -- it has lost mass and muscle and plaintiff also grieved this fact.

22. Plaintiff have filed grievances from day one and up to date, inquiring if he could be facing any permanent damages or disability as a consequence of his numbness, and even such thing is being kept from plaintiff.

6-3

23. For over a year now, plaintiff have been having "cramps" on his left leg, mostly at night, when sleeping: 8-10 times at night he have to stretch his leg.

24. When plaintiff walk, he feel like there is a cushion under his foot; he also feel like there are millions of little needles all over his foot and up, and, when walking, plaintiff favors his right leg, plus, plaintiff can not run.

25. As for his brain, plaintiff feel dizzy 24/7 -- at the beginning, in 2010, plaintiff hurt himself many times because it was something he didn't know how to deal with and therefore he didn't know how to handle himself because he felt like falling this way or that at all times. One time, plaintiff had to be taken to medical (July 2010) because he hurt the left side of his head banging it against the top bunk corner.

26. Defendant Nichols know all about plaintiff' injuries. She also know that plaintiff' injuries were caused by another inmate, and it all is documented in plaintiff's medical files, by nurse defendant Nichols herself.

27. Defendant Rummel was also well aware of plaintiff severe injuries and also, like defendant Nichols and the whole administration in Santa Rosa C.I., deliberately and knowingly denied plaintiff medical care (under the ruse "nothing is wrong with you") in order to protect the implicated officers in plaintiff' attempted murder on May 21, 2010. And it is a well known fact that all medical personnel everywhere in the DOC will go along with whatever the admini-

stration command them to do.

28. Plaintiff medical files will show that the medical department was well aware of plaintiff injuries, including the fact of plaintiff's spinal fracture. See paragraph 9 and 11, above. Also, when plaintiff was being taking to outside hospital in an ambulance, even though he was unconscious, he remember repeating, over and over "I've got a back injury, I've got a back injury." See paragraph 8, above.

29. Plaintiff medical files of that date and of the following day are full of notations concerning plaintiff complains, over and over and while unconscious, of his back pain. Again, see paragraph 9 and 11, above. Even while unconscious plaintiff was telling of a back injury and pain!

30. Now, upon being transferred to Florida State Prison on 7/8/15, plaintiff started attempting to seek medical care, and surprise! Defendant Vivas, the same one who ordered X-rays for plaintiff on March 2012 while in RMC and who told plaintiff of his spinal cord fracture, see paragraph 15, above, is now the Chief Health Officer or director in F.S.P. 3].

_____

3] after Dr Vivas told plaintiff of his spinal cord fracture on March /12, plaintiff filed several grievances concerning the cover up of this fact, so Dr Vivas "disappeared" from RMC — he was made director of Fla. St. Prison medical department : a reward for being a good mercenary: no bad.

6-5

31. Upon seeing doctor Vivas on August 2015, dr Vivas told plaintiff "mistakes can be made, that happen. Now we will find out why your left side is numb. I will first order a X-ray, then I will order a MRI. Be patient. I will help you." doctor Vivas was notably nervous that day, a clear sign of his <u>culpable state of mind.</u>

32. So defendant Vivas ordered X-ray (done by someone who go around with a little X-ray machine) and later on plaintiff was told [in response to a medical grievance], that his X-ray showed not a fracture but a "degenerating disc disease"-- in the same place of plaintiff's spinal cord fracture, and that doctor Vivas have not made any follow up appointment. See paragraph 31, above.

33. If a patient complain and complain over and over again, 4 or 8 <u>hundred times</u> for over five years non-stop, complaining of a serious medical issue, something is very wrong with this patient. If a doctor disregard and ignore such repeated complains, that doctor is denying this patient his right to medical care. We are not talking about a simple thing but about something terribly serious that could render plaintiff into a human vegetable, besides of the fact that being in this numb condition is worse than being dead— it is a cruelty beyond words.

34. Plaintiff left leg is getting atrophied, lossing mass and muscle. Plaintiff can't properly walk nor can he run, and to sleep is a nightmare for plaintiff, who now is having "cramps" on his left leg, too.

35. Only God knows what is in store for plaintiff, either in the

6-b

near future or at any other time. What plaintiff know is that
he is in danger of imminent serious injury, an injury that could
render plaintiff into a useless invalid or into a human vegeta-
ble, something worse than death itself.

36. That, after all this years of unnecessary suffering of this
horrible medical condition — with malignant and deliberate
indifference from the defendants and all implicated, who deny
plaintiff the care he so desperately need, and who deny his condition, too.

37. The fact of disregarding and ignoring plaintiff's serious
medical condition is an act of cruelty beyond words.

38. A doctor is bound by the Hipocratic oath to care for any one
in need of his care, and to disregard and ignore a patient's
begging and crying for medical care is not only cruel but also
inhumane. And when this doctor knows that they are not only
disregarding and ignoring this patient crys for care but that
they are also doing it by orders of the deposrtment that is not
only employeing them but also behind such injuries, then this
"doctors" are not doctors but mercenaries, a shock to the
conscience.

39. Defendants Nichols and Rummel were fully aware of
plaintiff severe head and bodily injuries — they know from day
one all about plaintiff's injuries, including plaintiff' fractured
spinal cord and his life threatening skull fracture in his left orbit
They also know about plaintiff "crying" while unconscious, talking

about a back injury and pain — all of that noted in plaintiff's medical files.

40. Defendants Rommel and Nichols are also the prime connivers agents in the cover up of plaintiff's injuries and that it was caused by another immate as will show plaintiff medical files, documented also by defendant Nichols herself.

41. Defendant Nichols and Rummel's actions were malicious when knowingly disregarded and ignored plaintiff many hundreds of cry for help and which amount to deliberate indifference to a serious medical condition and therefore constitute cruel and wanton infliction of pain, proscribed by the 8th Amendment to the U.S. constitution.

42. Defendant Vivas' disregard of plaintiff injury amount not only to cruel and unusual punishment but also classify him as a renegade, a mercenary, and a conniving agent agent of the department — he is well aware of plaintiff's fractured Spinal cord: he saw it with his own eyes, and with his own mouth he uttered "The X-rays showed a fracture in your spinal cord, that explain your leg". Defendant Vivas also examined and pricked plaintiff left leg all over with a needle, too — both in RMC in 2012 and again here, in Fla. St. Prison on August 2015.

43. Defendant Vivas' actions violated plaintiff's 8th Amendment

right and condemned Plaintiff to years of this horrible condition that could one day render Plaintiff into a human vegetable.

44. Defendant Vivas' disregard of his responsibility also amount to deliberate indifference to a serious medical condition and therefore constitute cruel and unusual punishment and the unnecessary and wanton infliction of pain, proscribed by the 8th amendment to the u.s. constitution.

45. Denied treatment for an ongoing serious medical problem have also been found to meet the "imminent danger of serious injury" standard. See page 6-12.

46. Every named defendants in this action violated plaintiff's 8th amendment rights, all carried out with deliberate indifference, with malice 4/ and evil intend, fully aware of what they were doing (they are educated people so they are fully aware of the results of their actions) and doing it with a sufficient culpable state of mind, knowing fully well that they were violating plaintiff' 8th amendment Constitution rights.

47. Plaintiff has no plain, adequate or complete remedy of law to redress the wrongs described herein. Plaintiff has been

---

4/ Thinking only about their job on a position and protecting co-workers rather than to honor their Hipocratic oath, and, plaintiff? "He is a convict."

and will continue to be irreparably injuried by the conduct of the defendants on a co-workers/box agents and their denial of medical care to plamtiss unless this court grant the declaratory and injunctive relief which plámtist seeks.

## Prayer for Relief

48. Wherefore, plaintist respectfully prays that this court enter judgment granting plamtist:

A. A declaration that the acts and omissions described herein violated plamtist's rights under the constitution and laws of the united states.

B. A preliminary and permanent injunction ordering to stop all abuses committed against him before and now as further retali- ation for filing grievances and this an another lawsuits against other co-workers, anywhere within the flori da DOC.

C. Prompt medical care for plamtist from an outside speci- alist, expert in back bone and brain.

D. Compensatory damages in accord with the cruelty committed against plaintist in the maximum monetary amount allowed by law against each defendants.

E. Punitive damages also in the maximum monetary amount allowed by law against each defendants.

F. A trial by jury.

6-10

G. Plaintiff's costs in this suit.

H. Any additional relief this court deems just, proper, and equitable. See page 7.


note: for this Court, and for all parties in this action.

From day one and up to date, the medical department and the DOC at all levels denys that there is anything wrong with plaintiff's left side. Wherefore, here is plaintiff' proposal to finish with this case right away.

The DOC and the defendants will agree to allow plaintiff to be evaluated by an independent back bone and brain specialist or whoever it call to evaluate plaintiff.

The DOC and the defendants can not oppose plaintiff's proposal since they alleges that there is nothing clinically wrong with plaintiff. See paragraph 20, above. That grievance' log # is: 1506-282-190, dated June 2015.

Wherefore, if an independent back bone and brain specialist found nothing clinically wrong with plaintiff, then this case will be moot and therefore should be dismissed -- with plaintiff' approval and with prejudice.

Then, Rule 1 of the Fed. Rules of Civ. P. will be honored, and the resources of both the court and the Department will be conserved.

In the name of truth and Justice, plaintiff challenge the DOC and the defandants to agree to plaintiff' proposal.

For over a year now plaintiff is having some kind of "cramps" on his left leg, and for the last 3-4 months he is having the following symptoms every night: while sleeping with his legs a little folded up (half fetal posture), plaintiff will wake up feeling like having a tight net wraping his left leg, so he have to stretch his whole body, tensing and contracting all his muscles real tight for about 10-15 seconds to get "relief."

This happen many times during the night, every night, see paragraph 23 in page 6-4. This is a new symptom.

Also, when plaintiff is getting out of bed, he feel like he is "stanned" and he have to get hold of anything because he know he may fall down. This, too, is a new symptom.

Yet, medical will tell plaintiff that there is nothing clinically wrong with his left leg/side. See paragraph 20, 24-25, and 34-35, above.

Plaintiff' left side, from the rib cage down, including his butt, penis, testicle, and stomach, is numb -- since May 21, 2010. Likewise, plaintiff' left side brain is also numb -- since May 21, 2010.

Plaintiff have grieved his condition non-stop for 5½ years now --from day one, hundreds of times. Again, see paragraph 45, above.

Finally, when plaintiff is lying in bed, no moving whatsoever, the front side of his left foot feel like having a hot tight sock on.

6-12

## VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

Plaintiff reallege and incorporate by reference paragraph 1 to 46 into this complaint's statement of facts.

The deliberate Indifference to serious medical needs violated Plaintiff rights and constituted cruel and unusual punishment under the 8th amendment to the U.S. constitution.

## VII.    RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

Prompt medical care. Punitive and compensatory damages in the maximum monetary amount allowed by law from each named defendant in their personal and individual and official capacity. Trial by jury. Any other relief this court deems just.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

Dec. 9th 2015
(Date)

_____
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☐ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on:
the  9th  day of  Dec.  , 20 15 .

_____
(Signature of Plaintiff)

Revised 03/07

7



Mailed from a State
Correctional Institution

Carlos Ruiz #D86219
Florida State Prison
7819 N.W. 228th Street
Raiford, Florida 32026

Office of the clerk
U.S. District Court
Northern Dist. of Florida
100 North Palafox Street
Pensacola, Fla. 32502

LEGA